UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRENDA SPIES,

    Plaintiff,

    v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

Case No. 17-cv-02012-PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 33

Defendant Life Insurance Company of North America's ("LINA") motion for summary judgment came on for hearing before this court on April 25, 2018. Plaintiff Brenda Spies appeared through her counsel, P. Randall Noah. Defendant appeared through its counsel, Anna Martin. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

## BACKGROUND[1]

**A.    The Genesis of This Action**

LINA contracted with Staples Inc. to provide short term and long term disability insurance ("STD" and "LTD," respectively). Staples employed Spies between September 3, 2013, and February 4, 2014. Dkt. 33-3, Maria Medina Decl. ¶¶ 11, 19. On February 5, 2014, Spies was hospitalized and diagnosed with ischemic colitis and lupus. Shortly thereafter, Spies submitted a claim for STD benefits. Medina Decl. ¶ 19.

---

[1] The court's factual recitation reflects the parties' undisputed facts.

On June 26, 2014, LINA approved plaintiff's STD claim through July 18, 2014. LINA later extended Spies' STD benefits through August 10, 2014, the 6-month maximum duration afforded by the STD plan. On August 21, 2014, LINA advised plaintiff that she was eligible for LTD benefits under the "regular occupation" definition of disability, with payments retroactively commencing on August 11, 2014. Though LINA reviewed medical records and physician opinions before making that determination, through an administrative mistake LINA failed to verify plaintiff's enrollment in and eligibility for benefits under the LTD plan. See Ex. G ("Eligibility Verification" form showing employee failed to verify existence of LTD "enrollment card"); Martin Decl. ¶ 3. As a result of this mistake, Spies received LTD benefits for nearly two years between August 2014 and June 2016.

In June 2016, because the definition of disability was set to change from "regular occupation" to "any occupation," LINA requested that plaintiff attend an independent medical examination. That examination concluded that plaintiff could work full time in a sedentary occupation. Accordingly, LINA determined that plaintiff was not entitled to further LTD benefits, notified her of that decision on July 28, 2016, and subsequently notified her that the decision had been upheld on appeal.

Plaintiff subsequently initiated this suit under 29 U.S.C. § 1132(a) challenging LINA's decision. While investigating plaintiff's claims, LINA discovered, and Staples confirmed, that Spies had never elected voluntary LTD coverage and had never paid LTD insurance premiums. Medina Decl. ¶ 20; Downey Decl. ¶ 3. Despite this undisputed fact and despite plaintiff receiving two-years' worth of LTD benefits that she was not entitled to, plaintiff argues that the court should require LINA to continue Spies' LTD benefits. LINA contends that it has no continuing obligations to Spies because she never enrolled in the LTD plan and, additionally, principles of equitable estoppel do not apply in this case.[2]

---

[2] LINA does not seek reimbursement of the mistakenly paid benefits. Dkt. 33 at 9 n.9.

2

## B. Staples' Benefits Plan and Spies' Benefits Elections

Staples offers a portfolio of health and welfare benefits for its full-time, non-exempt employees. Staples automatically enrolls its non-exempt employees in the following benefits: (1) basic life insurance; (2) accidental death & dismemberment insurance; and (3) short-term disability insurance. Medina Decl. ¶ 4.

Employees may also voluntarily elect other benefits. Id. ¶ 5. Long-term disability insurance is one such benefit. Id. To enroll in that benefit, an employee must affirmatively elect the LTD coverage either when first hired or during Staples' annual open enrollment. Id. LINA's LTD policy with Staples states that "An Employee . . . may elect to be insured only by authorizing payroll deduction in an electronic format . . . [and] [t]he effective date of this insurance depends on the date coverage is elected." Dkt. 33-2, Ex. A at 21. In other words, an employee must affirmatively elect to enroll in LTD insurance, may only do so by authorizing payroll deductions, and that deduction will appear as a deduction on the employee's paychecks. See id.; see also Medina Decl. ¶ 5; Ex. B at 27 ("You pay $0.364 per $100 of covered pay per month for LTD. When you enroll, you will see your specific paycheck cost.").

Staples' open enrollment period occurs between May and June each year. See Medina Decl. ¶ 6. In conjunction with open enrollment, Staples distributes a corresponding "Benefits Guide" that describes the benefits available and the procedures for enrolling in or modifying coverage. Id. ¶¶ 6-8. That Benefits Guide states that Staples provides STD coverage for free but employees must elect and purchase LTD coverage. Id.; Ex. B at 27 (2013-2014 Benefits Guide). It also states that if an employee elects LTD coverage, the premium payment will be deducted from the employee's paycheck. Ex. B at 27. After each enrollment period, regardless of whether the employee made benefits changes, Staples sends a "Confirmation of Elections Statement" that documents the employees' benefits ("Confirmation Statement"). Medina Decl. ¶¶ 10, 15, 17; Medina Reply Decl. ¶ 9.

Eligible employees also have an opportunity to review and elect voluntary benefits

3

when first hired. Medina Decl. ¶¶ 10, 13. Newly hired employees receive a worksheet that describes coverage options and the costs of those options. Id. The employee is also provided access to Staples' benefits website, which contains information about voluntary and automatic benefits. Id. After an employee elects coverage options through an online portal, Staples mails the employee her Confirmation Statement. Id.; Dkt. 35-1, Medina Reply Decl. ¶¶ 4-6.

When Staples hired Spies on September 3, 2013, Spies participated in the above process. Medina Decl. ¶ 13, 14. Plaintiff's initial employment paperwork included a personalized benefits worksheet, which included the option to elect LTD insurance. Id. ¶ 13. Plaintiff does not dispute that Staples provided her that worksheet. Indeed, it would be hard for her to do so because on the same day—September 3, 2013—plaintiff elected several other voluntary benefits, including dental and vision insurance. Id. ¶ 14; Ex. C; Medina Reply Decl. ¶ 6. The same records indicate that Spies "waived" LTD insurance. Ex. C; Medina Reply Decl. ¶ 5. On September 19, 2013, Staples sent plaintiff her Confirmation Statement showing the benefits she selected. Ex. D; Medina Decl. ¶ 15; Medina Reply Decl. ¶ 7. And once plaintiff became eligible to receive benefits, plaintiff's paychecks reflected premium payment deductions for the additional benefits Spies elected, but no deduction for LTD coverage. Medinal Decl. ¶ 16; see, e.g., Ex. E at 50 (Spies' paychecks).

Spies was on STD leave during Staples' 2014 open enrollment. Medina Decl. ¶ 17. Spies nevertheless received the 2014 Benefits Guide and, though she made no benefits changes, also received a subsequent Confirmation Statement. Medina Decl. ¶ 17; Ex. F. In any event, even if plaintiff had elected to enroll in LTD insurance at that time—and the evidence shows that she did not—that coverage would not have become effective because Spies never returned to Staples as a full-time employee. Ex. A. at 21 ("If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the employer on a full time basis."); see also Ex. A at 32 (defining "Active Service").

4

The best plaintiff musters in response to this evidence does not come close to creating a dispute of material fact about whether Spies enrolled in the LTD plan. Spies' declaration, the only evidence plaintiff submitted, merely states that Spies neither remembers being asked to opt in or out of LTD coverage nor remembers waiving that coverage. Dkt. 34-2, Spies Decl. ¶¶ 3-5.[3]

**DISCUSSION**

**A.  Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court that there is an absence of evidence to support the non-moving party's case. Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' " T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987) (citing Celotex, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

---

[3] Spies also attests that her "understanding was that [she] had long term disability insurance as an employee benefit from staples, which is why [she] was paid long term disability insurance benefits for two years . . ." Spies Decl. ¶ 6. Not only has plaintiff failed to show that her mistaken understanding is relevant, that understanding makes no chronological sense as Spies' mistaken belief needed to exist in September 2013, months before her hospitalization and a year before she began receiving LTD benefits.

reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Moreover, the evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

Summary judgment of an affirmative defense is proper in an ERISA case, particularly if the defense does not address the merits of an ERISA claim decision. See Gordon v. Deloitte & Touche, LLP Group Long Term Disability Plan, 749 F.3d 746, 751-753 (9th Cir. 2014) (upholding summary judgment based on statute of limitations not identified in denial letter); Upadhyay v. Aetna Life Ins. Co., 2014 WL 186709, at \*\*2-3 (N.D. Cal. 2014), reconsideration denied 2014 WL 883456 (N.D. Cal. 2014), aff'd 645 Fed. Appx. 569 (9th Cir. 2016) (reinforcing that summary judgment on contractual limitations is proper when merits of benefits claim decision not addressed).[4]

**B. Analysis**

**1. Whether Plaintiff Has Standing**

Defendant first argues that plaintiff does not have standing to bring this action because she is not a participant in the LTD plan. Plaintiff disagrees, arguing that she has standing because this is an ERISA claim concerning a group employee benefit offered

---

[4] For the same reason, the court rejects plaintiff's argument that the court cannot reach the enrollment issue because the claims administrator has not considered that issue and that instead the issue must be remanded for further administrative procedures. "Because the court is not reaching the merits of [LINA's] decision to deny benefits, [LINA] may raise [the] affirmative defense[ ] even if [it] w[as] not raised during the administrative process." Upadhyay, 2014 WL 186709, at \*2-3 (waiver and statute of limitations defenses).

6

and paid to plaintiff, a group member. The court agrees with defendant.

As relevant here, under 29 U.S.C. § 1132(a)(1)(B) plan "participants" are authorized to sue under the section of ERISA governing the protection of employee benefit rights. The Supreme Court has specifically rejected the assertion that a participant is any person who claims to be one. The Supreme Court explained:

> [T]he term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. . . . A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] "may become eligible."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117–18 (1989) (internal citations and quotation marks omitted).

"Whether a plaintiff is a plan participant is determined as of the time he files the lawsuit." Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1027 (9th Cir. 1995), overruled on other grounds by Leeson v. Transamerica Disability Income Plan, 671 F.3d 969 (9th Cir. 2012). That an employee thought she was a participant in the plan but was in fact not a participant does not give plaintiff a "colorable claim to vested benefits" for ERISA standing purposes. See Curtis, 53 F.3d at 1028–29 (plaintiff "never became eligible to receive benefits under the ERISA plan . . . and so does not have a colorable claim that he will prevail in a suit for benefits under ERISA." (emphasis in original)); Rosset v. Hunter Eng'g Co., No. C 14-01701 LB, 2014 WL 8623332, at *8 (N.D. Cal. Aug. 15, 2014) ("More broadly, though, under Ninth Circuit authority, a claim that a former employee plaintiff should have been included in a plan, but actually was not included in a plan, does not give [ ] the plaintiff a 'colorable claim to vested benefits' for ERISA standing purposes." (emphasis omitted) (collecting cases)). "[U]nder Ninth Circuit law, a plaintiff must actually participate in a benefits plan to sue under ERISA. This makes sense: one cannot have a

7

'colorable claim to vested benefits' when one never began accruing benefits at all."
Brown v. Google, Inc., No. C–05–01779 RMW, 2005 WL 1868186, at *3 (N.D. Cal. Aug. 3, 2005).

The evidence shows that Spies never elected LTD coverage. Therefore, she never became a participant in that insurance plan. Plaintiff does not dispute that the LTD plan is distinct from the other benefit plans Staples provides. The record would also not support that assertion. See generally, Ex. A; Downey Decl. ¶ 2. And plaintiff submits no authority in support of her counterintuitive argument that she has standing because she participated in Staples' other group insurance plans.

Accordingly, the court GRANTS LINA's motion for summary judgment because plaintiff lacks standing to state a claim based on the LTD plan.[5]

### 2. Whether Principles of Equitable Estoppel Apply

Assuming arguendo that plaintiff does have standing, defendant contends that it is also not obligated to continue paying Spies LTD benefits under an equitable estoppel theory. Though plaintiff disagrees, she does not attempt to meet the Ninth Circuit's test for equitable estoppel in an ERISA action. The court GRANTS defendant's motion for summary judgment on this alternative basis.

There is no dispute that under the right circumstances an ERISA insurer might be equitably estopped from withdrawing an ERISA plaintiff's benefits.[6] The Ninth Circuit has explained that to do so an ERISA plaintiff must meet the four traditional equitable estoppel requirements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so

---

[5] In Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 979 (9th Cir. 2012), the Ninth Circuit clarified that a plaintiff's statutory standing affects her ability to state a claim, not her ability to establish federal subject-matter jurisdiction.

[6] In the ERISA context, there is no freestanding equitable estoppel cause of action. Instead, the Supreme Court "has instructed [courts] to analyze equitable estoppel as a form of 'appropriate equitable relief' under § 1132(a)(3)(B)." Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 955 n.4 (9th Cir. 2014)

8

> intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 955 (9th Cir. 2014). And the plaintiff must also meet three additional ERISA-specific requirements:

> (1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan.

Id. at 955-57.

First, plaintiff makes no attempt to meet the ERISA-specific requirements. That alone is sufficient to grant defendant's motion for summary judgment. Davis v. Pension Tr. Fund for Operating Engineers, 694 F. App'x 586, 587 (9th Cir. 2017) (affirming summary judgment where plaintiff made "no argument and present[ed] no evidence" regarding extraordinary circumstances).

Further, plaintiff could not meet the second and third ERISA-specific requirements even if she had attempted to. The Ninth Circuit has "consistently held that a party cannot maintain a federal equitable estoppel claim in the ERISA context when recovery on the claim would contradict written plan provisions." Gabriel, 773 F.3d at 956-57. That's exactly what plaintiff argues should occur here. The provision is unambiguous: "An Employee . . . may elect to be insured only by authorizing payroll deduction in an electronic format approved by the Employer and the Insurance Company." Ex. A at 21. Moreover, plaintiff points to no specific "representation" by LINA about that provision, much less a representation that could be construed as an interpretation of ambiguous language. Lastly, even if Spies' receipt of LTD benefits and the administrative error were "interpretations" of the provision, that would not entitle plaintiff to estoppel. Gabriel, 773 F.3d at 959 ("[A] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself.").[7]

---

[7] The purported "representations" would also contradict the plan's "Policy Changes"

9

Second, regarding the traditional equitable estoppel requirements, Spies has not created a dispute of material fact about whether she was ignorant of the true facts. As described above, Staples informed plaintiff numerous times that she was required to affirmatively elect LTD coverage. See Medina Decl. ¶¶ 12, 17; Ex. B. After plaintiff elected certain voluntary benefits and declined LTD coverage during Staples' hiring process, Medina Decl. ¶ 14; Ex. C, Staples sent plaintiff a Confirmation Statement confirming that plaintiff had not elected LTD coverage. Medina Decl. ¶ 15; Ex. D. And between November 1, 2013 and February 4, 2014, plaintiff's paychecks reflected premium deductions for plaintiff's elected voluntary benefits and did not reflect deductions for LTD coverage. Ex. E. Plaintiff's vague attestations not only fail to create a dispute of material fact but fail to even contradict this showing. See generally, Spies Decl.

## CONCLUSION

In short, though Spies never elected LTD insurance, Spies received an $11,000 windfall because LINA mistakenly approved and awarded Spies two-years' worth of LTD benefits. As plaintiff was not a participant in the LTD insurance plan, she lacks statutory standing to bring her claim against LINA for the reinstatement of LTD benefits. The court GRANTS defendant's motion for summary judgment on that basis. In the alternative, the court GRANTS defendant's motion because plaintiff has not created a material dispute of fact supporting equitable relief.[8]

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 7, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

---

provision. Ex. A at 32 ("No agent may change the Policy or waive any of its provisions.").

[8] Plaintiff's counsel's request for attorneys' fees is DENIED. See Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1120 (9th Cir. 2010) ("a fees claimant must show some degree of success on the merits" (internal quotation marks omitted)).

10